# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MEGAN ROAKE, | ) | No. 73337-1-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MAXWELL DELMAN, | ) | PUBLISHED OPINION |
| Respondent. | ) | FILED: June 13, 2016 |

2016 JUN 13 AM 9: 11

COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

SPEARMAN, J. — The Sexual Assault Protection Order (SAPO) Act, chapter 7.90 RCW, establishes a special proceeding for a victim of sexual assault to obtain a civil protection order. Megan Roake filed a petition for a protection order under the SAPO Act. The trial court found that Roake failed to establish reasonable fear and dismissed. Because the proceeding was procedurally irregular and rested on an erroneous interpretation of the SAPO Act, we reverse and remand.[1]

## FACTS

Roake and Maxwell Delman had a sexual encounter and dispute whether it was consensual. Several months after the encounter, Roake filed a petition for a protection order under RCW 7.90. Roake's petition describes the alleged

---

[1] Respondent's motion to retitle the caption of this case and to use initials in the opinion is denied.

sexual assault. The petition also states that Roake only knew Delman based on the evening of the sexual assault, she did not know what he was capable of, and she feared encountering him at the University of Washington, where both Roake and Delman were students. The commissioner set a hearing date and granted Roake an ex parte temporary protection order valid until the full hearing.

At the hearing, Roake began to testify to the alleged assault. While she was testifying, Delman objected that he had not received all of the evidence that Roake had provided the court. The trial court granted a ten-day continuance.

Shortly before the next hearing date, Delman filed a motion to dismiss under CR 12(c). Delman submitted documentary evidence with his motion, including several declarations testifying to his good character. He did not submit his own declaration. At the hearing, Delman argued that Roake had failed to allege or prove that Delman made specific statements or actions giving rise to a reasonable fear of future dangerous acts, as required by RCW 7.90.020. He relied on Roake's petition, the declarations she submitted, and the transcript of the ex parte hearing. He also argued that, because Roake had failed to prove reasonable fear at the ex parte hearing, the temporary protection order was invalid.

Roake disputed that reasonable fear is an element that must be proved at a full SAPO hearing. She relied on the plain language of RCW 7.90.090(1)(a), which states that the court shall issue a protection order if it finds by preponderance of evidence that nonconsensual sexual conduct occurred. Roake

2

argued that her petition met the statutory requirements but that, in any case, the sufficiency of the petition and the validity of the temporary order are moot at the full hearing. She asserted that if the court decided that reasonable fear was an issue the parties could present testimony on that issue.

The trial court considered Roake's petition, the timing of the petition, the declarations submitted by Roake, and the transcript of the ex parte hearing. The court granted Delman's motion to dismiss and denied Roake's SAPO petition. The court did not hear further testimony and denied Roake's request to provide further briefing. In its order, the trial court stated that Roake "failed to establish that she had any reasonable fear of future dangerous acts from the Respondent and therefore the temporary order was invalid." Clerk's Papers (CP) at 98.

Roake appeals. She argues that the trial court's order denying her petition rested on an incorrect interpretation of the SAPO Act and was procedurally irregular.

## DISCUSSION

This case involves interpretation of the SAPO Act, ch. 7.90 RCW. We review questions of statutory interpretation de novo. Pham v. Corbett, 187 Wn. App. 816, 831, 351 P.3d 214 (2015) (citing State v. Wentz, 149 Wn.2d 342, 346, 68 P.3d 282 (2003)). In interpreting statutes, our aim is to discern and implement the Legislature's intent. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (citing Arborwood Idaho, LLC v. City of Kennewick, 151 Wn.2d 359, 367, 89 P.3d 217 (2004)). We begin with the plain meaning of

the statute. Id. We may discern the statute's plain meaning from "'the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" Id. (quoting State v. Engel, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009)). Where the plain meaning is unambiguous, we "'will not construe the statute otherwise.'" State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003) (quoting State v. Wilson, 125 Wn.2d 212, 217, 883 P.2d 320 (1994)).

In construing a statute, all the statutory language must be given effect, "'with no portion rendered meaningless or superfluous.'" J.P., 149 Wn.2d at 450 (quoting Davis v. Dep't of Licensing, 137 Wn. 2d 957, 963, 977 P.2d 554 (1999)). Just as we cannot delete words, "we 'must not add words where the legislature has chosen not to include them.'" Lake, 169 Wn.2d at 526 (quoting Rest. Dev., Inc., v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). We must assume that "'the legislature means exactly what it says.'" Davis, 137 Wn.2d at 963-64 (quoting State v. McCraw, 127 Wn.2d 281, 288, 898 P.2d 838 (1995)).

The SAPO Act establishes a special proceeding for a victim of sexual assault to obtain a civil protection order. RCW 7.90.005. The Act includes a legislative declaration recognizing that sexual assault "inflicts humiliation, degradation, and terror on victims." RCW 7.90.005. The declaration acknowledges that a victim of sexual assault may not receive relief from the criminal justice system and may not qualify for protection under other types of civil orders. RCW 7.90.005. The SAPO Act specifically applies to victims who

have experienced a single incident of nonconsensual sexual conduct. RCW 7.90.030(1)(a).

To seek a protection order under the SAPO Act, a victim of sexual assault files a petition with the court. RCW 7.90.040(1). Upon receipt of the petition, the court must order a full hearing to be held within fourteen days. RCW 7.90.050. The SAPO Act creates a mechanism for the petitioner to receive an ex parte temporary protection order valid until the contested hearing. RCW 7.90.110(1), .120(1). If the petitioner prevails at the hearing, the Act requires the court to grant a final protection order valid for up to two years. RCW 7.90.120(2). At issue are the SAPO Act's requirements for a petition, an ex parte temporary protection order, and a final protection order.

The SAPO Petition

Chapter 7.90.020 RCW addresses the SAPO petition. The statute states in relevant part:

> A petition for relief shall <u>allege the existence of nonconsensual sexual conduct or nonconsensual sexual penetration</u>, <u>and</u> shall be accompanied by an affidavit made under oath stating the <u>specific statements or actions made at the same time of the sexual assault or subsequently thereafter, which give rise to a reasonable fear of future dangerous acts</u>, for which relief is sought.

RCW 7.90.020(1) (emphasis added). The plain language of the statute indicates that a SAPO petition must contain two substantive allegations: (1) "the existence of nonconsensual sexual conduct or nonconsensual sexual penetration" and (2) a statement of the "specific statements or actions...which give rise to a

5

reasonable fear of future dangerous acts." The clauses are joined by the word "and," indicating that both allegations must be included in the petition.

Roake argues that sexual assault reasonably causes the victim to fear the offender. She thus asserts that, if a petition alleges that a sexual assault occurred and states that the petitioner fears the respondent, it satisfies RCW 7.90.020. Friends of the court King County Sexual Assault Resource Center, Washington Coalition of Sexual Assault Programs, Legal Voice, Northwest Justice Project, and Pacifica Law Group support this position.

The amicus briefs point to research indicating that sexual assault shatters a victim's sense of safety. The vast majority of survivors experience fear and anxiety after a sexual assault, and many survivors experience post-traumatic stress disorder. Amici argue that a sexual assault in itself is sufficient to give rise to a reasonable fear of future dangerous acts by the perpetrator.

We do not minimize the trauma that sexual assault leaves in its wake or dispute that a survivor may reasonably fear the person who assaulted her based on the assault alone. But the plain language of RCW 7.90.020 requires that a SAPO petition allege that nonconsensual sexual contact occurred and state "the specific statements or actions made at the same time of the sexual assault or subsequently thereafter, which give rise to a reasonable fear of future dangerous acts. . . ." RCW 7.90.020(1). The "specific statements or actions" must be separate from the sexual assault itself, because the requirement would otherwise be redundant. We must construe statutes so that "'no portion is rendered

6

meaningless or superfluous.'" J.P., 149 Wn.2d at 450 (quoting Davis, 137 Wn.2d at 963).

The language of RCW 7.90.020 is susceptible to only one reasonable reading. Where the plain language is unambiguous, we "will not construe the statute otherwise." J.P., 149 Wn.2d at 450. We conclude that RCW 7.90.020(1) has two elements. A petition for a protection order under the SAPO Act must include both (1) an allegation that a sexual assault occurred and (2) the specific statements or actions, other than the assault itself, that cause the petitioner to reasonably fear future dangerous acts from the respondent.

The phrase "future dangerous acts" is not defined in the SAPO Act. Roake argues that the phrase should be interpreted broadly because any future interaction with the offender poses a danger to the psychological well-being of a survivor of sexual assault. Appellant's Brief at 40-41. We need not interpret "future dangerous acts" here. But we note that even if any future interaction with the respondent poses a danger, a petitioner must nevertheless allege some specific statement or action that gives rise to a reasonable fear of that danger.

The Temporary and Final Protection Orders

We next consider the requirements for a temporary and a final protection order under the SAPO Act. Chapter 7.90.090 RCW addresses a petitioner's burden of proof. The statute makes the issuance of a protection order mandatory if the petitioner establishes that a sexual assault occurred and meets the requirements of a referenced statute:

> If the court finds by a preponderance of the evidence that the petitioner has been a victim of nonconsensual sexual conduct or nonconsensual sexual penetration by the respondent, the court shall issue a sexual assault protection order; provided that the petitioner must also satisfy the requirements of RCW 7.90.110 for ex parte temporary orders or RCW 7.90.120 for final orders.

RCW 7.90.090(1)(a).

Both referenced statutes concern notice requirements. The first, RCW 7.90.110, addresses an ex parte temporary order. It requires the petitioner to establish that a sexual assault occurred and to show that there is good cause to grant a temporary order despite any lack of service or notice:

> (1)   An ex parte temporary sexual assault protection order shall issue if the petitioner satisfies the requirements of this subsection by a preponderance of the evidence. The petitioner shall establish that:
> (a)   The petitioner has been a victim of nonconsensual sexual conduct or nonconsensual sexual penetration by the respondent; and
> (b)   There is good cause to grant the remedy, regardless of the lack of prior service of process or of notice upon the respondent, because the harm which that remedy is intended to prevent would be likely to occur if the respondent were given any prior notice, or greater notice than was actually given, of the petitioner's efforts to obtain judicial relief.

RCW 7.90.110(1).

The second referenced statute, RCW 7.90.120, addresses the notice requirements for a full hearing:

> A full hearing, as provided in this chapter, shall be set for not later than fourteen days from the issuance of the temporary order...Except as provided in RCW 7.90.050, 7.90.052, or 7.90.053, the respondent shall be personally served with a copy of the ex parte temporary sexual assault protection order along with a copy of the petition and notice of the date set for the hearing.

RCW 7.90.120(1)(a).

We see no ambiguity in the burden of proof statute, RCW 7.90.090. And neither party argues that the statute is ambiguous. The plain language of the statute directs the court to issue a protection order if the petitioner proves by preponderance of the evidence that the sexual assault occurred and shows that she satisfied the Act's notice requirements. Notably, RCW 7.90.090 does not require that a petitioner prove each of the allegations that must be included in a SAPO petition.

As discussed, a SAPO petition must allege both (1) that a sexual assault occurred, and (2) the existence of specific statements or actions that give rise to a reasonable fear that the respondent will perpetrate future dangerous acts. RCW 7.90.020. But a petitioner is not required to prove the second allegation. At the hearing, a petitioner only has the burden to prove that a sexual assault occurred. RCW 7.90.090(1)(a). If the petitioner proves this allegation by a preponderance of the evidence and shows that he or she met the procedural requirements specific to a temporary or a final order, the court "shall issue" a protection order. RCW 7.90.090(1)(a).

Delman argues that a petitioner must logically prove the same allegations that must be asserted in the petition. He asserts that a requirement to prove "specific statements or actions that give rise to a reasonable fear of future dangerous acts" may be inferred from RCW 7.90.110(1)(b). Delman is mistaken.

9

RCW 7.90.110(1)(b) provides that a petitioner may obtain an ex parte temporary protection order if he or she shows "good cause to grant the remedy...because the harm which that remedy is intended to prevent would be likely to occur if the respondent were given any prior notice, or greater notice than was actually given, of the petitioner's efforts to obtain judicial relief." RCW 7.90.110(1)(b). The statute addresses a petitioner's obligation to give notice to the respondent. To obtain a temporary order without providing that notice, a petitioner must show "good cause." The statute requires the petitioner to show that the "harm" which the protection order is intended to prevent would be likely to occur if the respondent were given notice. The statute does not require or create an inference that a petitioner must prove "specific statements or actions that give rise to a reasonable fear of future dangerous acts." And RCW 7.90.110 expressly applies only to a temporary protection order. There is no basis to infer that it has any application to a final protection order.

Delman also argues that it is absurd to read the Act as setting a lower burden to obtain a final protection order than for a petition or a temporary protection order. Delman asserts that by including "specific statements or actions that give rise to a reasonable fear of future dangerous acts" as a petition requirement in RCW 7.90.020, the Legislature implicitly included it as an allegation that must be proven under RCW 7.90.090. Thus, Delman asks us to read this allegation into RCW 7.90.090 in order to reconcile the inconsistency

between the requirements for a SAPO petition and the showing necessary to issue a SAPO.[2]

But our role is "'to interpret the statute as enacted,'" not to add words or subtract them. Woods v. Kittitas County, 162 Wn.2d 597, 614, 174 P.3d 25 (2007) (quoting Skagit Surveyors and Engineers, LLC v. Friends of Skagit County, 135 Wn.2d 542, 567, 958 P.2d 962 (1998)). "Just as we 'cannot add words or clauses to an unambiguous statute when the legislature has chosen not to include that language,' we may not delete language from an unambiguous statute." J.P., 149 Wn.2d at 450 (quoting State v. Delgado, 148 Wn.2d 723, 727, 63 P.3d 792 (2003)). When a statute is clear on its face, we must decline to change it even if we "believe[] the Legislature intended something else but did not adequately express it." Kilian v. Atkinson, 147 Wn.2d 16, 21, 50 P.3d 638 (2002) (quoting Wash. State Coalition for the Homeless v. Dep't of Soc. & Health Servs., 133 Wn.2d 894, 904, 949 P.2d 1291 (1997)).

We conclude that the SAPO Act, by its plain language, requires that a petition include an allegation that the respondent made specific statements or actions giving rise to a reasonable fear of future dangerous acts. However, the Act does not require that a petitioner prove this allegation to obtain a protection order. The SAPO Act is clear that at a full hearing for a final protection order, the petitioner has the burden to prove by a preponderance of the evidence that a

---

[2] However, an equal argument could be made to reconcile the inconsistency by removing the requirement of "specific statements or actions" from RCW 7.90.020. Arguably, this would be consistent with RCW 7.90.040(1), which mentions only an allegation of sexual assault as required in a SAPO petition.

sexual assault occurred. The petitioner must also show that she has satisfied the Act's notice requirement. If the petitioner meets this burden, the court "shall issue" a final protection order.

## The Motion for Judgment on the Pleadings Under CR 12(c)

We next consider whether the trial court erred in dismissing Roake's SAPO petition in response to Delman's motion for judgment on the pleadings under CR 12(c). Delman contends that the trial court properly granted his CR 12(c) motion based on both Roake's petition and all of the evidence in the record. Roake argues that the trial court's order should be reversed because the proceedings did not meet the requirements of CR 12(c) or CR 56 and were therefore irregular.

This court reviews a dismissal under CR 12(c) or CR 56 de novo. Didlake v. Washington State, 186 Wn. App. 417, 422, 345 P.3d 43, review denied, 184 Wn.2d 417 (2015). The civil rules apply to special proceedings except where they are inconsistent with statutory requirements specific to the special proceeding. CR 81(a); Christensen v. Ellsworth, 162 Wn.2d 365, 374-76, 173 P.3d 228 (2007). CR 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." But when matters outside the pleadings are considered the motion may no longer be treated as a motion for judgment on the pleadings and must be treated as a motion for summary judgment:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the

> motion shall be treated as one for summary judgment and disposed of as provided in rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by rule 56.

CR 12(c).

In this case, matters outside the pleadings were presented to and not excluded by the court. Along with his motion, Delman attached several declarations, evidence of a University of Washington student conduct hearing, and an article concerning unfounded investigations into child sex abuse. At the hearing, Delman argued that his motion should be granted based on Roake's petition, the transcript of the ex parte hearing, and the declarations she submitted. The court considered each of these items. The motion must therefore be evaluated as a motion for summary judgment under CR 56.

Under CR 56(c), a motion for summary judgment "shall be filed and served not later than 28 calendar days before the hearing." CR 56(c). And a hearing on a motion for summary judgment shall be heard "more than 14 calendar days before the date set for trial." Id. These requirements are inconsistent with the SAPO Act, under which the court must order the full hearing to be held within fourteen days of receipt of the petition. RCW 7.90.050. Accordingly, we conclude that CR 56 does not apply and that Delman's motion was not properly before the court.[3]

---

[3] We express no opinion on whether a timely CR 12(c) motion would have been proper in the context of a SAPO proceeding.

Furthermore, even if Delman's motion was properly before the court, it was improperly granted. To survive a motion for summary judgment, a plaintiff must produce evidence that raises a question of material fact as to each element that must be proved. Young v. Key Pharmaceuticals, Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (citing Celotex Corp., v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Delman requested dismissal arguing that Roake had failed to prove specific statements or actions giving rise to a reasonable fear of future dangerous acts. The trial court's order dismissing Roake's petition states that she "failed to establish that she had any reasonable fear of future dangerous acts from the Respondent." CP at 98. But as discussed above, the SAPO Act does not require a petitioner to prove the "specific statements or actions" allegation. The only substantive allegation Roake had to prove was that a sexual assault occurred. The record before the trial court raised a question of material fact as to that issue.

The trial court also indicated that it granted Delman's motion because "the temporary order was invalid." CP at 98. But the SAPO Act provides no basis for considering the validity of the temporary order in determining whether to grant a final protection order. Under RCW 7.90.090, the petitioner has the burden to prove that a sexual assault occurred and that she met the procedural requirements specific to a final order. RCW 7.90.090(1); RCW 7.90.120. The validity of the ex parte temporary order is irrelevant to this determination. The trial

14

court erred in considering the validity of the ex parte order in determining whether to grant a final protection order under the SAPO Act.

Delman's motion to dismiss was not properly before the trial court and the trial court granted that motion based on an erroneous reading of the SAPO Act. We accordingly reverse and remand for further proceedings. We do not reach Roake's further arguments that the trial court erred in considering the timing of her petition and in denying her a full hearing.

Reverse and remand.

Spearman, J.

WE CONCUR:

Trickey, ACJ

Leach, J.